Woodrow DAGNAN, Petitioner–Appellant,

v.

BLACK DIAMOND COAL MINING COMPANY and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents–Appellees.

No. 92–6227.

United States Court of Appeals, Eleventh Circuit.

July 9, 1993.

Peggy H. Cook, Clark & James, P.C., Birmingham, AL, for petitioner-appellant.

Jeffrey S. Goldberg, U.S. Dept. of Labor, Patricia M. Nece, Washington, DC, for respondents-appellees.

James N. Nolan, James Franklin Ozment, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for Black Diamond Coal Min.

Before DUBINA, Circuit Judge, CLARK and ESCHBACH [*], Senior Circuit Judges.

DUBINA, Circuit Judge:

Petitioner Woodrow Dagnan ("Dagnan") appeals the Benefits Review Board's (the "BRB") denial of benefits to him under the Black Lung Benefits Act, 30 U.S.C. §§ 901–962. The BRB upheld the Administrative Law Judge's (the "ALJ") denial of benefits on the ground that Dagnan failed to establish the presence of pneumoconiosis. Dagnan appeals the denial on the grounds that (1) a doctor's diagnosis of anthracosis is legally sufficient to establish pneumoconiosis, and (2) the ALJ erred by excluding evidence Dagnan submitted after the record had closed. Because we hold that the denial of benefits must be reversed for the first reason, we need not reach the second.

## I. STATEMENT OF THE CASE

### A. Background Facts

Dagnan was employed as a coal miner and carpenter by Black Diamond Coal Company ("Black Diamond") for thirty years and seven months. He testified that for the last five to six years of his employment Black Diamond had him maintain a water pump because his deteriorating health prevented him from performing his prior duties.

The medical evidence of record begins with Dr. Robert Stroud admitting Dagnan to the hospital on May 11, 1981, for a lung biopsy because his chest x-ray showed a coin lesion on the right upper lobe of his lung. Upon Dagnan's admittance, Dr. Stroud examined him by electrocardiogram and found atrial fibrillation with a rapid ventricular response. Dagnan's lungs were clear as to auscultation and percussion but there was a "slight decrease in breath sounds in all fields." Dr. Stroud believed that the x-ray was "highly suggestive of neoplastic process."

Dr. John Hendrix performed a esophago-gastro-duodenoscopy on May 18, 1981, diagnosing a large hiatal hernia. Dr. Hendrix suggested surgery to repair the hiatal hernia and remove the coin lesion on the lung.

After Dagnan underwent lung surgery, Dr. J.D. Reinhardt performed a biopsy on a removed section of the lung. As part of Dr. Reinhardt's macroscopic examination, he described the subpleural lung tissue as having "subpleural anthracotic pigment," and he diagnosed "[b]enign subpleural plaque with coagulation necrosis and anthracotic pigment." His microscopic examination found that

[s]ections of the lung show normal appearing lung tissue with quite a bit of anthracotic pigment especially in the perivascular spaces. The white plaque on the pleural surface shows fibrous thickening of the pleural surface and an area of necrotic tissue. There is a lot of anthracotic pigment on the edges of the necrotic tissue within fibrous tissue and within macrophages and there is some pigment even within the necrotic areas. I do not see any granulomas or acute inflammation.

Dr. Reinhardt concluded with this diagnosis: "Portion of upper lobe of lung showing benign subpleural anthracotic plaque and severe anthracosis."

Dr. A. David Russakoff, a pulmonary specialist and B-reader,[1] evaluated an x-ray dat-

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

[1]. A B-reader is a radiologist who has demonstrated proficiency in assessing and classifying x-ray evidence of pneumoconiosis by passing an

examination given by the Department of Health and Human Services. *Mullins Coal Co. v. Director, O.W.C.P.*, 484 U.S. 135, 145 n. 16, 108 S.Ct. 427, 433 n. 16, 98 L.Ed.2d 450 (1987).

ed March 21, 1981. Dr. Russakoff found no evidence of pneumoconiosis, but found chronic bronchitis, kyphoscoliosis and a coin lesion on one lung of undetermined etiology. In conjunction with the examination, Dr. Russakoff conducted arterial blood gas and ventilatory studies, but Dagnan performed within the normal ranges for a person of his height and age. Dr. Russakoff also found that Dagnan's heartbeat was abnormal. Knowing that Dagnan worked in coal mines for thirty-one years and knowing his family, health and social histories, Dr. Russakoff still believed that Dagnan's conditions were unrelated to coal mine employment.

Dagnan was discharged from the hospital on May 30, 1981, and Dr. H. Hood wrote a discharge summary. Dr. Hood diagnosed a benign right upper lobe lesion, a repaired hiatal hernia, atrial fibrillation and mild congestive heart failure. Dr. Hood noted that the biopsy specimen of the coin lesion "revealed [ ] an anthracotic plaque."

On July 8, 1985, Dr. Stroud conducted an additional examination of Dagnan. Dagnan was subsequently hospitalized and underwent coronary artery bypass surgery. Dr. Stroud wrote a letter on August 16, 1985, describing that incident and his earlier treatment of Dagnan. Dr. Stroud stated that Dagnan's hospitalization resulted in a diagnosis of "critical multivessel coronary artery disease with some findings suggestive of an old myocardial infarction." An exercise tolerance test "reveal[ed] findings consistent with angina." Dr. Stroud went on to state that Dr. Hawkins, a pulmonary specialist, found that Dagnan's pulmonary function studies "indicated a mild ventilatory defect with airflow obstruction of the small airways." Based on the lung biopsy, Dr. Stroud concluded that

> the significant anthracotic pigment desposition [sic] on the lung tissue, beyond any shadow of a doubt, had a significant effect on the patient's ventilatory status, and unquestionably contributed to his chronic problem of dyspnea.... The finding of the pigment within the lung parenchyma is strong evidence for significant anthracosis within the lung parenchyma, and without question, could significantly effect [sic] pul-

monary function without necessarily effecting [sic] significantly the spirometry.

Since Dagnan's dyspnea on exertion predated his cardiac symptoms, Dr. Stroud believed that the two were unrelated.

Dr. H.C. Aderholt read an x-ray, dated July 10, 1985, as indicating hiatal hernia, postoperative changes and mild cardiomegaly.

Dr. Stroud submitted an additional report on September 3, 1985, stating:

> After reviewing Mr. Dagnan's history, medical record, and physical exam, it is my impression that his airway disease and his chronic lung disease prevent him from performing the sustained manual type of labor that he formerly preformed, that is the carpentry and maintenance work that he has done in the past.

The final piece of medical evidence was a letter from Dr. George Scofield, a pathologist, dated January 23, 1986. Dr. Scofield reviewed the May 19, 1981, pathology report and lung tissue slides and stated that he agreed completely with Dr. Reinhardt's interpretation and diagnosis that the biopsy sample contained a fibrous plaque or nodule secondary to anthracosis.

## B. Procedural History

On February 19, 1981, Dagnan filed a claim for benefits under the Black Lung Benefits Act. The Director of the Office of Workers' Compensation Programs (the "Director") denied the claim. Dagnan requested reconsideration, and his claim was again denied. Dagnan then requested a formal hearing, and on August 8, 1985, a hearing was held before an ALJ. The ALJ issued a decision and order denying benefits. In the decision, the ALJ concluded that Dagnan had not established the presence of pneumoconiosis. Dagnan filed a motion for reconsideration and submitted additional evidence in the form of the opinion from Dr. Scofield. The ALJ denied the motion and refused to consider the new evidence. Dagnan appealed to the BRB which upheld the denial of benefits. He then perfected this appeal, and the Director chose to participate.

## II. ANALYSIS

■ Since Dagnan filed his claim on February, 19, 1981, it falls under the "Standards for Determining Coal Miners' Total Disability or Death Due to Pneumoconiosis" at Title 20 of the Code of Federal Regulations, Part 718. 20 C.F.R. § 718.2 (1992). To establish entitlement to black lung disability benefits under Part 718, a miner must establish "(1) that he suffers from pneumoconiosis, (2) that his pneumoconiosis arose from his coal mine employment, and (3) that he is totally disabled due to pneumoconiosis." *Lollar v. Alabama By–Products Corp.*, 893 F.2d 1258, 1262 (11th Cir.1990) (quoting *Mangus v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor*, 882 F.2d 1527, 1529 (10th Cir.1989)). The ALJ denied benefits after determining that Dagnan failed to establish the existence of pneumoconiosis, the first element of entitlement, by either x-ray evidence or biopsy evidence pursuant to 20 C.F.R. § 719.202(a)(1), (2), (3) and (4). Dagnan disputes only the ALJ's finding that the evidence was insufficient to establish pneumoconiosis under 20 C.F.R. § 718.202(a)(2) and (4).

■ Dagnan and the Director argue that the uncontradicted biopsy evidence showing "severe anthracosis" is sufficient by itself to establish pneumoconiosis under 20 C.F.R. § 718.202(a)(2).[2] Black Diamond responds (1) that the biopsy does not meet the requirements of 20 C.F.R. § 718.106 for admissability, and (2) that the biopsy shows only anthracotic pigment, a biopsy is no different from an autopsy, and under 20 C.F.R. § 718.202(a)(2) "[a] finding in an autopsy of anthracotic pigmentation [ ] shall not be sufficient, by itself, to establish the existence of pneumoconiosis."

■ We review decisions of the ALJ "only as to whether they are in accordance with law and supported by substantial evidence in light of the entire record." *Lollar*, 893 F.2d at 1261. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1262. Our review of BRB decisions is *de novo*. *Id.* at 1261.

■ While Black Diamond contends that the biopsy report does not meet the requirements for admissibility in 20 C.F.R. § 718.106[3] because the report does not contain a surgical note, it does not state what effect this should have on this case. Black Diamond's failure to state its position on this point is irrelevant, however, because the biopsy evidence meets the requirements substantially. Even though 20 C.F.R. § 781.106(b) states that "[n]o report of [a] ... biopsy submitted in connection with a claim shall be considered unless the report complies with the requirements of this section," 20 C.F.R. § 718.106(b), the director has interpreted this section to require only substantial compliance because the section goes on to state that reports for miners who died before March 31, 1980, "shall be considered when the reports are not in *substantial compliance* with the requirements." *Director, Office of Workers' Compensation Programs, United States Dept. of Labor v. Mangifest*, 826 F.2d 1318, 1326 n. 13 (3rd Cir.1987) (quoting 20 C.F.R. § 718.106(b)) (emphasis

---

2. 20 C.F.R. § 718.202(a)(2) states:
   (a) A finding of the existence of pneumoconiosis may be made as follows:
   ....
   (2) A biopsy or autopsy conducted and reported in compliance with § 718.306 may be the basis for a finding of the existence of pneumoconiosis. A finding in an autopsy of anthracotic pigmentation, however, shall not be sufficient, by itself, to establish the existence of pneumoconiosis. A report of autopsy shall be accepted unless there is evidence that the report is not accurate or that the claim has been fraudulently represented.

3. 20 C.F.R. § 718.106 (1992) states in pertinent part:

   (a) A report of an autopsy or biopsy submitted in connection with a claim shall include a detailed gross macroscopic description of the lungs or visualized portion of a lung. If a surgical procedure has been performed to obtain a portion of a lung, the evidence shall include a copy of the surgical note and the pathology report of the gross and microscopic examination of the surgical specimen....
   (b) No report of an autopsy or biopsy shall be considered unless the report complies with the requirements of this section, except that in the case of a miner who died prior to March 31, 1980, such reports shall be considered even when the reports are not in substantial compliance with the requirements of this section....

added). Unless an agency's interpretation of its regulation is "plainly erroneous or inconsistent with the regulation," we must defer to the agency's interpretation. *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *see also North New Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982); *Mangifest,* 826 F.2d at 1323. Since the Director's interpretation of § 718.106(b) as requiring only substantial compliance is neither plainly erroneous nor inconsistent with the regulation, we must accept this construction.[4] Since the biopsy report contained a gross macroscopic description of the lungs and a copy of the pathology report of the gross and microscopic examination of the specimen, it met all of the remaining elements for admissibility. Therefore, the ALJ did not err in finding that the report substantially complied with the requirements and admitting it.

Black Diamond's second contention is that the biopsy shows only anthracotic pigment, a biopsy is no different from an autopsy, and under 20 C.F.R. § 718.202(a)(2) "[a] finding in an autopsy of anthracotic pigmentation [ ] shall not be sufficient, by itself, to establish the existence of pneumoconiosis." Black Diamond argues therefore that the ALJ was correct in determining that the biopsy evidence did not establish pneumoconiosis because the evidence showed only anthracotic pigment.

■ While the Director agrees with Black Diamond that a biopsy is no different from an autopsy and, as a result, under § 718.-202(a)(2) a finding of anthracotic pigmentation alone in a biopsy is insufficient to establish pneumoconiosis, the Director agrees that we need not reach this part of Black Diamond's argument if we find that the biopsy evidence shows more than anthracotic pigmentation. Both the Director and Dagnan argue that the biopsy evidence does in fact show more than mere anthracotic pigmentation.[5]

■ After reviewing the record, we are persuaded that Dagnan and the Director are correct and that the ALJ's finding that the biopsy evidence showed only anthracotic pigmentation was contrary to the substantial weight of the evidence. The ALJ stated that the biopsy evidence showed that

> there was a lot of anthracotic pigment on the edges of the necrotic tissue within fibrous tissues with some fibrous thickening of the pleural surface and an area of necrotic tissue, but did not establish nodular fibrosis associated with pneumoconiosis, but only the pigmentation of discoloration of the lung surface.

(Decision and Order Denying Benefits of 12/19/85, at 3). The ALJ erred first in concluding that nodular fibrosis is necessary to establish pneumoconiosis. Dagnan, the Director and Black Diamond all agree that a diagnosis of anthracosis is sufficient to establish pneumoconiosis. This is specifically set out in the definition of pneumoconiosis, 20 C.F.R. § 718.201 (1992), and has been has been accepted by the BRB, *see, e.g., Bueno v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor,* 7 Black Lung Rep. 1–337, 1–340 (BRB 1984); *Dobrosky v. Director, Office of Workers' Compensation Programs, United States Dept. of Labor,* 4 Black Lung Rep. 1–680, 1–684 (BRB 1982), and all of the circuits that have addressed the issue, *see Peabody Coal Co. v. Shonk,* 906 F.2d 264, 268 (7th Cir. 1990); *Daugherty v. Dean Jones Coal Co.,* 895 F.2d 130, 132 (4th Cir.1989); *Youghiogheny & Ohio Coal Co. v. Milliken,* 866 F.2d 195, 197 (6th Cir.1989); *Consolidation Coal Co. v. Smith,* 837 F.2d 321, 322 n. 2 (8th Cir.1988).

■ The ALJ also erred in finding that the biopsy evidence showed only anthracotic pigmentation. Dr. Reinhardt distinguished between anthracotic pigmentation and anthracosis. Although he noted that anthracotic pigmentation was present within fibrous

---

4. The BRB also construes the standards for admissibility set out in 20 C.F.R. § 718.106(b) to be only guidelines and not mandatory. *See, e.g., Dillon v. Peabody Coal Co.,* 11 Black Lung Rep. 1–113, 1–114, 1–115 (1988).

5. In this instance we are not required to defer to the Director's view that the biopsy shows more than anthracotic pigmentation because this is not an interpretation of the regulation but an interpretation of the facts of the case.

tissue, his diagnosis was "severe anthracosis." His diagnosis was supported by the opinion of Dr. Stroud who stated that there was "strong evidence for significant anthracosis." By disregarding the diagnoses of Drs. Reinhardt and Stroud, the ALJ impermissibly substituted his opinion for those of the physicians. *See Peabody Coal Co. v. Helms*, 859 F.2d 486, 489 (7th Cir.1988); *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158 (3rd Cir.1986). While an ALJ "is not bound to accept the opinion or theory of any medical expert [and] may weigh the medical evidence and draw its own inferences,.... 'an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.'" *Kertesz*, 788 F.2d at 163 (quoting *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir.1985)).

Since we agree with Dagnan and the Director that the ALJ erred in holding that pneumoconiosis was not established under 20 C.F.R. § 718.202(a)(2), we need not reach Dagnan's argument that the ALJ erred in holding that pneumoconiosis was not established under 20 C.F.R. § 710.202(a)(4).

## III. CONCLUSION

Because the ALJ erred in holding that the biopsy evidence was insufficient to establish pneumoconiosis, the ALJ's denial of benefits for Dagnan must be reversed and this case remanded to the ALJ for consideration of the remaining two requirements for entitlement to black lung benefits: that Dagnan's pneumoconiosis was caused by mine employment and that he is totally disabled due to pneumoconiosis.

REVERSED and REMANDED.