**Myrtle GRIFFITH, widow of
Otis Griffith, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 93–4171.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 9, 1994.

Decided Feb. 14, 1995 *.

---

\* This decision was originally issued as an "unpublished decision" filed on February 14, 1995. The court has now designated the opinion as one recommended for full-text publication.

Kenneth A. Buckle (briefed), Collett & Buckle, Hyden, KY, for petitioner.

Marta Kusic and Anne Swiatek (briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondent.

Before: MILBURN, SUHRHEINRICH, and LAY,** Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which MILBURN, J., joined. LAY, J. (pp. 187–89), delivered a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

Myrtle Griffith, petitions for review of the Benefits Review Board's (BRB) decision denying her survivor's benefits under the Black Lung Benefits Act. 30 U.S.C. §§ 901–945. We **AFFIRM.**

## I.

Otis Griffith, Myrtle's husband, worked in the coal mines for fourteen years and smoked a pack of cigarettes a day for fifty. He filed a Part B claim in 1971 and a duplicate claim under Part C of the regulations in 1983. Griffith died in 1985, and Myrtle filed her claim for survivor's benefits shortly thereafter. Both claims were denied by the Office of Workers' Compensation Programs ("OWCP"). However, only Mrs. Griffith's survivor's claim is before this court on appeal. The ALJ denied benefits on the ground that the miner's death was not due to pneumoconiosis. The BRB affirmed.

** The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth

In prior appeal, this court held that the ALJ applied an incorrect legal standard in determining that Griffith did not die "due to pneumoconiosis," as defined under 20 C.F.R. § 718.205(c). The court remanded for a determination of whether pneumoconiosis was a "substantially contributing cause" of the miner's death, rather than whether the miner's death "significantly related to or significantly aggravated by pneumoconiosis." *Griffith v. Director, OWCP,* No. 90–3160, 1990 WL 164635 (6th Cir. Oct. 29, 1990) (unpublished). The ALJ, using the correct legal standard, again determined that Mrs. Griffith was not entitled to benefits under Part 718 of the regulation. The BRB affirmed this second decision.

The ALJ considered the following medical evidence:

(1) The miner's death certificate, prepared by Dr. Leland Irwin. It states that the immediate cause of death as cardiorespiratory arrest due to or in consequence of coronary artery disease. (NOT in J.S., but see original ALJ decision J.A. 27.)

(2) The autopsy report, prepared by Dr. James L. Bauer. The report noted emphysema, pigment in the lungs "consistent with coal pigment," but "not accompanied by fibrosis." It concluded that the cause of death was "most likely [ ] an arrhythmia secondary to a myocardial infarction which occurred approximately 5 to 7 days prior to death." Finally, Dr. Bauer also remarked that he saw "no evidence of coal workers pneumoconiosis of the lungs." (J.A. 13–15.)

(3) A letter from Dr. Alan David, Griffith's treating physician, stating that Griffith did have chronic obstructive pulmonary disease, or emphysema. Dr. David also remarked that "[w]hether or not he had pneumoconiosis is not clear," because the autopsy report did not specifically identify black lung disease; and that Griffith had chronic obstructive lung disease, which might be due to both smoking and working in the coal mines. (J.A. 16.)

Circuit, sitting by designation.

(4) A medical report from Dr. Cordell H. Williams, dated January 24, 1984. He diagnosed "(1) arteriosclerotic heart disease with history of previous myocardial infarction, left bundle branch block and frequent multi-focal PVC's.... (2) COPD [chronic obstructive pulmonary disease] with pneumoconiosis 1/0 P S four lower zones." (NOT in J.A., but see original ALJ decision J.A. 28 (apparently quoting Williams' report)). Dr. Williams is a "B" reader.

— This x-ray was reread by Drs. W.S. Cole and R.A. Elmer as negative. Both are "B" readers and Board-certified radiologists.

(5) A medical report from Dr. Robert D. Matheny regarding an examination on April 24, 1984. Dr. Matheny interpreted a chest x-ray as positive for pneumoconiosis. He diagnosed "(1) pneumoconiosis, 1/0—1/1 p s, (2) chronic obstructive pulmonary disease—emphysema, (3) post myocardial infarction, and (4) arrhythmia."

— This x-ray was reread by Dr. Bent Brandon, a "B" reader and Board-certified radiologist, as showing 1/0 p s opacities.

Applying 20 C.F.R. § 718.205(c), the ALJ concluded that "the record is devoid of any persuasive evidence establishing the miner's death was due to pneumoconiosis," and denied benefits. The ALJ relied on the fact that the death certificate did not mention pneumoconiosis as a cause of death, and that the autopsy report found no evidence of pneumoconiosis. He noted that the medical reports of Drs. Williams and Matheny diagnosed pneumoconiosis, but felt that they "add[ed] nothing as to the cause of the miner's death." Finally, he remarked that "Dr. David's report was equivocal regarding the etiology of the miner's pulmonary disease as well as the cause of the miner's death," and was therefore given less weight. This appeal followed.

## II.

▮ This court must affirm the BRB's decision if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's determinations. *Director, OWCP v. Quarto Mining Co.*, 901

F.2d 532, 536 (6th Cir.1990). We decide only whether the decision below is supported by substantial evidence and is in accordance with the applicable law. *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir.1985) (per curiam). A claimant establishes that "pneumoconiosis is a substantially contributing cause or factor leading to the miner's death if it serves to hasten that death in any way." *Brown v. Rock Creek Mining Co.*, 996 F.2d 812, 817 (6th Cir.1993).

Plaintiff argues that the report of Dr. David, supported by the autopsy findings of lung pigmentation, meets the standard articulated in Brown. Regarding the autopsy report, she contends that it showed "pigmented macrophage in a subpleural position as well as surrounded scattered bronchi" and that the pigment was "yellow-black consistent with coal pigment," which evidence supports a finding that the miner suffered from pneumoconiosis. This claim, however, is inconsistent with the Secretary's regulations. 20 C.F.R. § 718.202(a)(2) states that "[a] finding in an autopsy of anthracotic pigment[ation] ... shall not be sufficient, by itself, to establish the existence of pneumoconiosis."

▮ Plaintiff also argues that, contrary to the ALJ's finding, Dr. David's opinion was not "equivocal" as to the cause of the miner's death. We disagree. Dr. David was not equivocal on the point that Griffith had chronic obstructive lung disease and that it contributed to the ultimate cause of his death. Dr. David was, however, quite equivocal as to the etiology of the obstructive lung disease—naming both smoking and coal mine employment as possibilities. Thus, the ALJ did not err in discrediting Dr. David's opinion. *See Risher v. OWCP*, 940 F.2d 327, 331 (8th Cir.1991) (agreeing with ALJ's determination that treating physician's statement that patient "probably had black lung disease" did not constitute finding "supported by a reasoned medical opinion," under § 718.202.(a)(4)). *Cf. Garcia v. Director, OWCP*, 869 F.2d 1413, 1416–17 (10th Cir. 1989) (doctor's conclusion that blood gas test results "probably" were attributable to non-respiratory causes, standing alone, could not

discharge Director's burden of showing that something other than pneumoconiosis was primary cause of disability). Thus, under these circumstances, the ALJ was not required to give greater weight to the opinion of the treating physician. *See Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir.1993).

■ Thus, without Dr. David's report, the only positive evidence of pneumoconiosis is the conflicting x-ray reports. We conclude that the ALJ did not err in giving greater weight to the autopsy report. *See Peabody Coal Co. v. Shonk*, 906 F.2d 264, 269 (7th Cir.1990) (autopsy evidence is entitled to more weight than x-ray evidence in establishing existence of pneumoconiosis). **AFFIRMED.**

LAY, Circuit Judge.

I respectfully dissent. This case has been before this court on a previous occasion and we remanded it to the ALJ for further consideration under a proper legal standard. *See Griffith v. Director, Office of Workers' Compensation Programs*, No. 90–3160, 1990 WL 164635 (6th Cir. Oct. 29, 1990). We asked the ALJ to review the record as to whether pneumoconiosis was a "substantially contributing cause" of Griffith's death. On remand, the ALJ and the Board, in finding the evidence was insufficient to establish pneumoconiosis as a substantially contributing cause, noted that the death certificate concluded death was due to cardiorespiratory arrest and also that the autopsy report stated that the cause of death was "an arrhythmia secondary to a myocardial infarction which occurred 5 to 7 days prior to death."

The Board found the ALJ properly discredited the report of Dr. David, the miner's treating physician, because "the only evidence of record which could support a finding that pneumoconiosis hastened the miner's death," was equivocal.

The majority opinion agrees with the finding of the ALJ and the Board and expressly disagrees with the plaintiff's contention that "Dr. David's opinion was not 'equivocal' as to the cause of the miner's death." Yet the majority acknowledges that Dr. David "was not equivocal on the point that Griffith had chronic obstructive lung disease and that it contributed to the ultimate cause of his death." The majority emphasizes, however, that Dr. David's opinion was "quite equivocal as to the etiology of the obstructive lung disease—naming both smoking and coal mine employment as possibilities."

I respectfully submit the majority's holding is somewhat confusing because the cause of death and the etiology of the obstructive lung disease are clearly separate issues. The ALJ did not need to determine whether the lung disease was related to coal mine employment unless the death itself was caused by "pneumoconiosis" as defined in the regulations. The record clearly shows the ALJ found Dr. David's report was equivocal as to the cause of the miner's death. The Board agreed and apparently so does the majority. However, it is clear Dr. David's report was not equivocal as to the cause of death. The Director even concedes the ALJ's error in this regard, pointing out:

> We cannot defend the ALJ's finding that Dr. David's opinion was equivocal regarding the cause of the miner's death. Dr. David affirmatively stated that the miner's chronic lung disease did contribute to his death, in that the disease increased the work load on the heart, which led to the miner's death. Although Dr. David's conclusion is not further explained, and contains no other support in the evidence of record, it does not suffer from equivocation.

Director's Brief, p. 13 n. 5. That Dr. David's report might be said to be equivocal as to the etiology of the obstructive lung disease is at this stage of analysis immaterial. The ALJ should not have discredited Dr. David's opinion as to the cause of the death. The ALJ's plain error on this point should require us at the very least to remand the case.

If proper credit is given to the treating physician's report,[1] the question then arises

---

1. *See Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir.1993) ("It is clearly established that opinions of treating physicians are entitled to greater weight than those of non-treating physicians. *See, e.g., Sexton v. Director, OWCP*, 752 F.2d 213, 215–16 (6th Cir.1985);

as to whether the chronic obstructive lung disease which substantially contributed to Griffith's death comes within the statutory definition of pneumoconiosis. I respectfully submit that the record as a whole provides overwhelming support that Griffith suffered from pneumoconiosis as statutorily defined. It is important to recognize that pneumoconiosis is defined in the statute as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). Under 20 C.F.R. § 718.201 the regulations state that "a disease 'arising out of coal mine employment' includes *any* chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." (emphasis added).

In addition to the regulation's legal definition of pneumoconiosis as including any chronic respiratory disease, there is convincing medical evidence in the record that Griffith did suffer and die from this lung disease. There is a report by Dr. Cordell Williams on his examination of Griffith on January 24, 1984. Dr. Williams obtained a chest x-ray, which he interpreted to show 1/0 P S pneumoconiosis, a pulmonary function study, and an arterial blood gas study. He noted that Griffith had worked in the mines for fourteen years. He found a chronic obstructive pulmonary disease with pneumoconiosis 1/0 P S four lower zones.

A similar report was written April 24, 1984, by Dr. D. Matheny who obtained an x-ray which was read as positive for pneumoconiosis. He diagnosed that Griffith had pneumoconiosis along with a chronic obstructive pulmonary disease of emphysema.[2] The x-ray by Dr. Matheny was reread by Dr. Brent Brandon, a "B" reader and board certified radiologist, and continued to show 1/0 P S opacities.

Even the ALJ finds there is a "possibility" the miner did have some degree of pneumo-

coniosis, but he discounts this on the basis that the doctor who performed the autopsy was unable to identify any fibrosis in Griffith's lungs. This analysis misses the point. Under the legal definition of pneumoconiosis it is not necessary to find fibrosis to establish the presence of the disease. *See Dagnan v. Black Diamond Mining Co.*, 994 F.2d 1536, 1541 (11th Cir.1993). The simple form of pneumoconiosis is caused by coal dust and the categorization refers to the perfusion of small rounded opacities in the lungs visible on x-rays. *See Drummond Coal Co. v. Freeman*, 733 F.2d 1523, 1525 n. 3 (11th Cir.1984) (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 7, 96 S.Ct. 2882, 2888–89, 49 L.Ed.2d 752 (1976)). In *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 591 (7th Cir.1985), the court observed that chronic obstructive pulmonary "whether or not technically black lung disease (pneumoconiosis), fits the statutory definition, which is broader than the medical [definition]." Although the autopsy report relied on by the majority as well as the ALJ finds there is no evidence of pneumoconiosis in Griffith's lungs, Dr. Bauer did note the presence of emphysema in the lungs with yellow black pigment consistent with coal pigment. As the majority points out, the secretary's regulations hold that "[a] finding in an autopsy of anthracotic pigmentation, however, shall not be sufficient, *by itself*, to establish the existence of pneumoconiosis." 20 C.F.R. § 718.202(2) (emphasis added). In the present case, there is other evidence reinforcing this finding so that the coal pigment does not stand "by itself." The autopsy report certainly corroborates that the emphysema contained a yellow black pigment which was consistent with coal pigment. This strengthens the relationship of the miner's work experience to the chronic disease from which he died.

I respectfully submit that under the regulation's own definition and together with the medical examinations by Dr. Williams, Dr. Miner, and Dr. David, there is ample support

---

*Collins v. Secretary of Health and Human Services*, 734 F.2d 1177, 1179–80 (6th Cir.1984)").

**2.** The fact that other "B" readers found that the x-rays were negative is not conclusive evidence

of the absence of pneumoconiosis. *See Peabody Coal Co. v. Holskey*, 888 F.2d 440, 442 (6th Cir.1989).

to find that Griffith's chronic lung condition hastened his death and was thereby a substantially contributing case of death for the purposes of section 718.205(c)(2). *See Brown v. Rock Creek Mining, Inc.,* 996 F.2d 812, 816 (6th Cir.1993). It seems the only reason the ALJ and the Board failed to reach this conclusion was because they erroneously felt Dr. David's statement as to the cause of death was equivocal. This was clearly wrong. Assuming for purposes of argument that Dr. David's statement on the etiology was equivocal because he stated the condition may have resulted "from smoking and working in the coal mines," there remain other compelling reasons to find Griffith's chronic lung disease was related to his work in the mines. The autopsy report, although not showing the presence of medical pneumoconiosis, certainly supports the claim that his emphysema was related to work in the coal mines. But more importantly, 30 U.S.C. § 921(c)(1), which the ALJ and the Board did not cite, creates a rebuttable presumption for miners who have pneumoconiosis who were employed for ten or more years in a coal mine that their "pneumoconiosis arose out of such employment." 20 C.F.R. § 718.203(b) sets out this presumption as follows: "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment."

So the question of etiology, or the relationship of the miner's experience in the coal mine to his chronic respiratory disease, is answered by the rebuttable presumption because there is no negative evidence in the record sufficient to rebut the presumption. Of course, this is bootstrap or circuitous reasoning unless in fact the plaintiff can establish that Griffith did suffer from pneumoconiosis. However, there is no question that Dr. David specifically found that chronic lung disease substantially contributed to Griffith's death. I respectfully submit that under the statutory and regulatory definitions, Griffith's chronic disease qualifies as pneumoconiosis. And beyond this, there exists on the record as a whole substantial medical evidence supporting a finding of pneumoconiosis.

I respectfully submit that because the ALJ and the Board erroneously found, as conceded by the Director, that Dr. David's statement of the cause of death was equivocal, this matter should be at the very least returned to the ALJ for reconsideration, giving due credit to the statement of the treating physician, Dr. David. Although this is the minimum procedure due to Mrs. Griffith's claim, I would suggest the record as a whole supports a finding that the cause of Griffith's death was pneumoconiosis and that the presumption that the disease arose from his coal-mining work has not been rebutted. On this basis, I feel that benefits should be awarded.