**Joe D. SIMPSON, Petitioner,**

v.

**NATIONAL MINES CORPORATION; Old Republic Insurance Company; Director, OWCP, United States Department of Labor Respondents.**

Nos. 01–3423, 01–3430, –2=3041.

United States Court of Appeals, Sixth Circuit.

Dec. 11, 2002.

Before BATCHELDER and COLE, Circuit Judges; and GRAHAM, District Judge.*

## OPINION

COLE, Circuit Judge.

Petitioner Joe D. Simpson ("Simpson") appeals the Decision and Order of the Benefits Review Board, United States Department of Labor ("Board") affirming a denial of benefits under the Black Lung Benefits Act of 1977, 30 U.S.C. § § 901—945. Simpson makes three arguments in his appeal for review by this Court. First, Simpson argues that the administrative law judge ("ALJ") applied the wrong standard in reviewing his claim for modification under 20 C.F.R. § 725.310 (2000). Alternatively, Simpson argues that the ALJ committed reversible error by assigning undue weight to the evidence submitted by Respondent National Mines Corporation ("National Mines") based on numerical superiority. Finally, Simpson argues that the ALJ improperly discounted the clinical opinions of his treating physician, Dr. Terry Wright.

For the following reasons, we AFFIRM the decision of the Board.

## I.

Simpson is a 68–year–old disabled miner who has an eighth-grade education. He began working in the coal mines of Kentucky in 1966 and after nineteen years of coal mining employment he was laid off by his last employer, National Mines. Simpson smoked one and one-half packs of cigarettes a day for twenty-four years and in 1999 he testified that he had reduced his smoking to one pack per day. He has not worked since being laid off on May 24, 1985 and it is undisputed that Simpson is totally disabled due to his severe respiratory impairment.

This case spans fifteen years and involves an extensive history of hearings and appeals. Immediately after being laid off in 1985, Simpson received fifty-two weeks of unemployment benefits from the state of Kentucky. In May, 1987, Dr. N'Sunda Bangudi diagnosed Simpson as suffering from coal workers' pneumoconiosis.[1] Simpson was awarded benefits by the Kentucky Workers' Compensation Board ("WCB") for an occupational disability of 60%. However, the WCB attributed only 30% of his disability to coal worker's pneumoconiosis caused by his history of coal dust exposure and the other 30% of his respiratory problems to his long history of cigarette smoking.

In addition to his state claim, Simpson concurrently filed a claim for benefits under the federal Black Lung Act.[2] After the

---

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1. Pneumoconiosis is defined as follows: (a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. 20 C.F.R. § 718.201(2000).

2. In order to qualify for benefits pursuant to 20 C.F.R. § 718.202 (2000), a miner must establish that: (1) he has pneumoconiosis by

Director of the Office of Workers' Compensation Programs ("OWCP") denied Simpson federal benefits, the case was referred to the Office of Administrative Law Judges and a formal hearing was held on September 25, 1989. Administrative Law Judge Daniel Roketenetz awarded Simpson benefits on March 21, 1991. After considering the "conflicting at best [X-ray] readings," the ALJ concluded that "true doubt" existed and he gave Simpson the benefit of that doubt and found the presence of pneumoconiosis.

On April 26, 1993, the Board vacated the finding of the ALJ of the existence of pneumoconiosis as unsupported by a preponderance of evidence on record. In particular, the Board remanded the case because it found the ALJ "did not address the evidence with the necessary degree of specificity." Simpson immediately appealed to this Court to review the Board's decision, but we dismissed the motion to appeal because the decision of the Board was not a final order reviewable by the Court. The case then was remanded to ALJ Roketenetz and on October 14, 1994, Simpson was denied benefits. On remand the ALJ again found the x-ray reports equally probative, but found the intervening decision of the United States Supreme Court in *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), controlling.[3] Applying the rule in *Greenwich Collieries*, the ALJ found that the x-ray evidence had not established the presence of pneumoconiosis. The ALJ also found that Simpson failed to establish the presence of pneumoconiosis through use of medical opinion evidence.

On July 31, 1995 the Board affirmed the denial of benefits by the ALJ, reasoning that the ALJ's decision was supported by substantial evidence and contained no reversible error. That decision was affirmed by this Court on February 25, 1997. *See Simpson v. National Mines Corp.*, 107 F.3d 871 (6th Cir.1997)(per curiam)(unpublished).

On January 15, 1998, less than one year after the second decision of the Board, Simpson filed for a modification of his denial of benefits pursuant to 20 C.F.R. § 725.310 (2000).[4] In support of his claim, Simpson submitted new evidence from Dr. Glen Baker diagnosing the presence of pneumoconiosis. After the district director denied this modification request on May 21, 1998, Simpson requested a formal hearing that was held by ALJ Thomas Phalen on May 19, 1999. On January 31, 2000, the ALJ concluded that there was insufficient evidence to support the existence of pneumoconiosis and an attendant award of benefits. In making his conclusions, the ALJ reviewed both the x-ray

either a chest x-ray, a biopsy or autopsy, the existence of one of the applicable legal presumptions of pneumoconiosis or by medical opinion evidence notwithstanding a negative x-ray; (2) the pneumoconiosis was caused by his coal mine employment; and (3) the pneumoconiosis rendered him totally disabled as established by qualifying pulmonary function studies or qualifying arterial blood gas studies. Each element of a claim must be proven by a preponderance of the evidence in order for the miner to receive federal benefits.

**3.** In *Greenwich Collieries,* decided after the 1993 decision of the Board, the Supreme

Court held that the "true doubt rule" violated § 7(c) of the Administrative Procedure Act and when evidence was equally probative the claimant must lose.

**4.** Section 725.310 states in relevant part: (a) Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the district director may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.

evidence and medical opinion evidence. The x-ray evidence showed only three positive readings out of the sixteen total readings submitted. After evaluating the qualifications of the various readers, the ALJ concluded that based upon this new evidence Simpson had failed to establish the existence of pneumoconiosis by a preponderance of the evidence. The ALJ also reviewed five medical opinions and concluded that they too failed to establish the existence of pneumoconiosis by a preponderance of the evidence. In assessing the medical opinions, the ALJ placed little weight on the opinion of Simpson's treating physician, Dr. Wright, because he found it less well documented and reasoned. Instead, the ALJ placed more weight on the opinions of National Mines' physicians, Dr. Bruce C. Broudy and Dr. Ben V. Branscomb, both of whom concluded that Simpson's impairment was the result of his extensive smoking history. The ALJ summarized his conclusions as follows:

> I place less weight on Dr. Wright's opinion because it is unclear what he relied on in reaching it. There is no mention of smoking or coal mine employment history in his notes and responses. The opinions of Drs. Broudy and Branscomb are well documented and reasoned. They each noted that while Mr. Simpson had not worked in the coal mining industry since 1985, his heavy smoking continued for some time, and his respiratory capacity declined. These factors evince the logical nature of their conclusions while simultaneously exhibiting the flaw in Dr. Baker's opinion. Accordingly, I credit the opinions of Drs. Broudy and Branscomb over those of Drs. Baker and Wright, and conclude that the claimant failed to establish that his totally disabling respiratory impairment is due even in part to pneumoconiosis.

At the end of his opinion, ALJ Phalen reviewed the entire record and found no mistake of fact was committed in the previous denial of benefits by ALJ Daniel Roketenetz on October 14, 1994.

On March 29, 2001, the Board issued a *per curiam* opinion affirming ALJ Phalen's denial of benefits. The Board rejected Simpson's argument that the ALJ applied the incorrect legal standard in finding the evidence insufficient to establish a change of conditions under 20 C.F.R. § 725.310. Additionally, the Board rejected the argument by Simpson that the ALJ erred in assigning undue weight to the numerical superiority of the negative x-ray readings provided by the employer. The Board also held that the ALJ properly accorded more weight to the better reasoned and documented opinions submitted by physicians with superior qualifications in concluding that the evidence was insufficient to establish the existence of pneumoconiosis. Finally, the Board rejected the claim by Simpson that the ALJ erred in failing to consider and weigh the evidence with respect to his finding of no mistake in a determination of fact. Simpson then filed a timely notice of appeal to this Court.

## II.

The standards of review for this Court and the Board are the same. *Welch v. Benefits Review Bd.*, 808 F.2d 443, 445 (6th Cir.1986)(per curiam). As such, this Court is limited to a narrow review of the decision of the Board and must affirm that decision if the Board has not committed any legal error and has not exceeded its scope of review of the determination by the ALJ. *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir.1998). The Court reviews the decision of the ALJ only to decide whether it is supported by substantial evidence and is in accordance with the applicable law. *Id.* Substantial evidence is "more than a mere scintilla"; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Consolidation Coal Co. v. McMahon,* 77 F.3d 898, 901 (citations omitted). We consider only whether the ALJ adequately explained his reasoning and conclusions in deciding either to award or deny benefits. This Court does not reweigh the evidence and as long as the ALJ's conclusions are supported by the evidence, this court will not reverse "even if the facts permit an alternative conclusion." *Youghiogheny & Ohio Coal Co. v. Webb,* 49 F.3d 244, 246 (6th Cir.1995).

### III.

### A.

■ Less than a year after the Board declined to award him benefits, Simpson brought a claim for modification of his denial of benefits under 20 C.F.R. § 725.310.[5] The Sixth Circuit has stated that a modification request need not specify any factual error or change in conditions, rather the claimant may allege simply that the denial of benefits was wrongly decided. *Consolidation Coal Co. v. Worrell,* 27 F.3d 227 (6th Cir.1994)(per curiam). In evaluating the request for modification, ALJ Phalen stated that his standard of evaluation would be in accordance with the precedent in *Kingery v. Hunt Branch Coal Co.,* Board No. 92–1418 BLA (Nov. 22, 1994), *Napier v. Director, OWCP,* 17 B.L.R. 1–156 (1990), *Nataloni v. Director, OWCP,* 17 B.L.R. 1–82 (1993), and *Kovac v. BNCR Mining Corp.,* 14 B.L.R. 1–156 (1990), *modified on recon.,* 16 B.L.R. 1–71 (1992). Specifically, the ALJ detailed his standard of review in the following manner:

I will review the newly submitted evidence, in conjunction with prior evidence, to determine whether such evidence establishes that claimant suffers from pneumoconiosis and that his totally disabling respiratory condition is due to pneumoconiosis ... If either is established, I will consider all the evidence of record to determine whether he is entitled to benefits. In addition, the entire record will be reviewed to determine whether a mistake in the determination of a fact occurred in a prior denial of benefits.

■ Simpson argues that the ALJ articulated the wrong legal standard and that the Board incorrectly affirmed that mistake of law. He insists that the ALJ should have applied the standard that this Court announced in *Sharondale v. Ross,* 42 F.3d 993 (6th Cir.1994). But the Court in *Ross* articulated the standard of review for duplicate claims filed under 20 C.F.R. § 725.309 (2000),[6] which are claims that have been filed more than one year after a previous denial of benefits. The standard in *Ross* instructs the ALJ to first consider only the newly admitted evidence, both favorable and unfavorable, to determine whether the miner has proven at least one element of entitlement before considering the entire record. *Ross,* 42 F.3d at 997–98.

Even Simpson acknowledges that his advocation of applying *Ross* in the context of a claim under 20 C.F.R. § 725.310 is patently without merit, freely admitting that this Court has never applied the *Ross* standard in the context of a § 725.310

**5.** The adjudication of this present case is unaffected by the new regulations issued by the Secretary of Labor revising many of the regulations applicable to the adjudication of black lung claims. The regulations became effective on January 19, 2001 and generally apply to pending claims. But this case falls within one of the enumerated exceptions and thus is governed under the previous regulations.

**6.** Section 725.309 provides in part: (d) If a claimant files a claim under this part more than one year after the effective date of a final order denying a claim previously filed by the claimant ... the later claim shall be considered a subsequent claim for benefits.

proceeding. Nevertheless, Simpson claims that this Court applied the *Ross* standard to a modification claim under 20 C.F.R. § 725.310 in *Bartley v. Director, OWCP,* 11 Fed.Appx. 564, 2001 WL 669991 (6th Cir.)(unpublished). But a careful reading of our decision in that case reveals that the Court applied the more narrow *Ross* standard because "[t]he decision which Bartley seeks to modify denied a duplicate claim for benefits ... [and] ... [p]ursuant to 20 C.F.R. § 725.309(d), it is the claimant's burden to show a material change in his condition before he is entitled to further adjudication." *Bartley,* 11 Fed.Appx. at 565. It is obvious, therefore, that the court applied the *Ross* standard because the claim came under § 725.309. As the Board declared upon review of Simpson's claim, "the standard in *Ross* applies to duplicate claims under 20 C.F.R. § 725.309(2000) and does not apply to requests for modification under 20 C.F.R. § 725.310(2000). The instant case does not involve a duplicate claim." Given that this Court in *Worrell* set forth a very broad and lenient standard for consideration of the evidence under proceedings for modification, there is even less support for Simpson's argument for a more limited review of the evidence by the ALJ under § 725.310. *Worrell,* 27 F.3d at 230 (stating that the deputy commissioner has broad discretion when evaluating claims under 20 C.F.R. § 725.310).

Furthermore, even if this Court were to find that the *Ross* standard applied in this case, the ALJ found the newly submitted x-rays and medical opinions insufficient to establish the existence of pneumoconiosis under 20 C.F.R. § 718.202(a)(4)(2000) or total disability due to pneumoconiosis under 20 C.F.R. § 718.204(b)(2000). Therefore it is unclear why Simpson argues that he would be entitled to benefits under the *Ross* standard using only the newly submitted, and arguably less probative, evidence. Accordingly, we reject Simpson's argument and affirm the standard of review of the medical evidence employed by ALJ Phalen.

## B.

▮ Next, Simpson argues that the ALJ improperly assigned undue weight to the evidence offered by the employer based on numerical superiority. The ALJ did discuss the numerical superiority of the evidence submitted by the employer and noted that "[i]t is within the Court's discretion to defer to numerical superiority of the x-ray interpretations. *Edmiston v. F & R Coal Co.,* 14 BLR 1–65 (1990)." But the ALJ also took notice of the requirement in the Sixth Circuit that the qualifications of readers be considered in cases of numerical superiority:

> the Sixth Circuit ... has confirmed that consideration of the numerical superiority of the x-ray interpretations, when examined in conjunction with the readers' qualifications is the proper method for weighing evidence. *Staton v. Norfolk and Western Railway Co.,* 65 F.3d 55(6th Cir.1995)(citing *Woodward v. Director, OWCP,* 991 F.2d 314 (6th Cir. 1993)[sic].

Applying this standard to the sixteen newly submitted x-ray readings, the ALJ detailed the qualifications of each of the readers and found that "a greater number of 'B' readers [7] and board certified [8] physi-

---

**7.** Certified 'B' reader or 'B' reader means a physician who has demonstrated proficiency in evaluating chest roentgenograms for roentgenographic quality and in the use of the ILO–U/C classification for interpreting chest roentgenograms for pneumoconiosis and other diseases by taking and passing a specially designed proficiency examination given on behalf of or by the Appalachian Laboratory for Occupational Safety and Health. 20 CFR §§ 718.202(a)(1)(ii)(E).

**8.** Board-certified means certification in radiology or diagnostic roentgenology by the

cians found the x-ray evidence to be negative." In particular, he found that "the readings of no pneumoconiosis by twelve "B" readers and/or board-certified radiologist substantially outweigh the three readings, by two dually certified readers and one "B" reader, consistent with pneumoconiosis." Evaluating the submitted x-rays in turn, the ALJ first found that the December 17, 1997 x-ray was read positive by one "B" reader and one "B" who is also a board certified radiologist. But, five other dually certified readers reread the same film as negative. He also found that the February 18, 1998 film was found negative by all three dually certified readers and that the August 19, 1998 film was read positive by only one dually certified reader, but reread as negative by three other dually certified readers, and one "B" reader. From this evidence, the ALJ concluded that the higher number of negative readings by "B" and board certified readers supported his conclusion that Simpson had failed to establish the existence of pneumoconiosis by a preponderance of the evidence.

This careful discussion by the ALJ clearly signifies that he properly applied the standard of the Sixth Circuit by assessing the numerical superiority of the evidence in conjunction with the qualifications of the physicians. Therefore, the decision of the ALJ is supported by substantial evidence and this Court should leave that decision undisturbed.

### C.

■ Finally, Simpson argues that the opinions of his treating physician, Dr. Ter-

ry Wright, were improperly discounted by the ALJ. He cites to *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036,1041 (6th Cir.1993), for the proposition that the opinions of treating physicians are entitled to more weight than non-treating physicians. While this is an accurate statement of a clearly established principal in the Sixth Circuit, the ALJ was also required to evaluate the opinions of Dr. Wright based on his determination of the doctor's credibility. *See Griffith v. Director, OWCP*, 49 F.3d 184 (6th Cir.1995)(holding that an ambiguous and unsupported report by the treating physician was correctly given less weight). In particular, the ALJ afforded little weight to the opinion of Dr. Wright because he found that his opinion was

> based on one x-ray which was not interpreted as showing pneumoconiosis. Thus his opinion is belied by the only objective evidence he considered. Although he treated the miner since February 1998, there is no indication that Dr. Wright was aware of Mr. Simpson's occupational or smoking histories, thus rendering his opinion less well reasoned and documented.

Additionally, the ALJ found that in assessing whether Simpson's total disability was due to pneumoconiosis, the opinion of Dr. Wright lacked support and documentation and was therefore entitled to less weight. More importantly, the ALJ noted the peculiar absence of any diagnosis of pneumoconiosis in the progress notes of Dr. Wright: "Dr. Wright's progress notes do not show any diagnosis of pneumoconiosis, thus casting suspicion on his diagnosis of the disease only when asked by claimant's counsel." In sum, the ALJ was concerned

American Board of Radiology, Inc. or the American Osteopathic Association. 20 CFR

§§ 718.202(a)(1)(ii)(C).

about the credibility of Dr. Wright and accordingly gave that opinion less weight notwithstanding the fact that he was the treating physician. In assessing a determination of credibility by an ALJ "[t]his court will defer to an ALJ's determination of credibility and resolution of inconsistencies in testimony, including the weight to be accorded to physician's opinions, where, as here, the ALJ is supported by substantial evidence." *Worrell,* 27 F.3d at 231 (citation omitted). Given this standard of review, this Court must affirm the decision of the Board that the opinion of the ALJ is supported by substantial evidence and he did not err in affording less weight to the opinion of Simpson's treating physician.

We conclude that ALJ Phalen's ultimate finding that Simpson does not suffer from pneumoconiosis was supported by substantial evidence. He supplied a detailed analysis of all the medical evidence and testimony and issued an opinion supported by substantial evidence and in accordance with the law of this Circuit. Accordingly, we decline to reverse the Board's affirmance of the order denying benefits.

### IV.

For the foregoing reasons we AFFIRM the order of the Board.