*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0347p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ISLAND CREEK KENTUCKY MINING,
                                                *Petitioner*,

                   *v.*                                            No. 12-3873

ROY P. RAMAGE, SR.; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,
                                                *Respondents*.

Upon Petition for Review of a Decision and Order of the Benefits Review Board.
Nos. 08-BLA-5469; 11-0530 BLA.

Decided and Filed: December 17, 2013

Before: BATCHELDER, Chief Judge; GUY and MOORE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** William S. Mattingly, JACKSON & KELLY PLLC, Morgantown, West Virginia, for Petitioner. Brent Yonts, BRENT YONTS, PSC, Greenville, Kentucky for Respondent Ramage. Gary K. Stearman, Ann Marie Scarpino, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. In this case, the Benefits Review Board ("the Board") affirmed the decision of the administrative law judge ("ALJ") granting Roy P. Ramage Sr.'s claim for federal black lung benefits. Island Creek Kentucky Mining ("Island Creek") petitions for review of that decision claiming that the ALJ erred on several grounds. Moreover, while Ramage benefitted from a presumption revived by recent legislation, Island Creek claims that the award of benefits is premature because the Department of Labor had not yet enacted regulations to implement the

1

legislation. Because we hold that the ALJ's determinations were reasoned and reasonable and that the legislative provisions in question are self-executing, we **DENY** the petition for review.

## I.  BACKGROUND

Ramage, born in 1933, worked for Island Creek for twenty-eight years, including five years underground and twenty-three years on the surface of Island Creek's underground mine. He filed this claim for benefits on March 1, 2007. On September 2, 2009, the ALJ conducted a formal hearing at which the parties also submitted exhibits. After the hearing, the parties filed closing briefs.

During the pendency of the claim, Congress revived a statutory rebuttable presumption that a coal miner who worked in an underground coal mine for fifteen years and suffers from a total respiratory or pulmonary disability is presumed to be totally disabled due to pneumoconiosis. *See* Patient Protection and Affordable Care Act ("PPACA"), Pub. L. No. 111-148, § 1556, 124 Stat. 119 (2010); *see also* 30 U.S.C. § 921(c)(4). The reenacted presumption applies to claims filed after January 1, 2005, and pending at the time of enactment in 2010. PPACA, Pub. L. No. 111-148, § 1556(c).

Ramage's claim fit the timing criteria, and the ALJ solicited both position statements regarding the applicability of the revived presumption to this claim and new evidence in light of this law. All parties filed position statements, but did not present new evidence.

In his Decision and Order Awarding Benefits ("ALJ Dec.") issued on April 26, 2011, the ALJ noted that the timing of Ramage's claim fit the criteria of the rebuttable presumption. Jt. App'x at 305 (ALJ Dec. at 2). The ALJ then found that, based on the Board's decision in *Alexander v. Freeman United Coal Mining Co.*, 2 BLR 1-497

(1979),[1] Ramage was employed for at least fifteen years in an underground coal mine. Jt. App'x at 320 (ALJ Dec. at 17).

The ALJ reviewed and summarized the evidence including the claimant's medical records. Jt. App'x at 307–17 (ALJ Dec. at 4–14). The ALJ noted that the results of x-rays did not show pneumoconiosis, Jt. App'x at 308 (ALJ Dec. at 5), that Ramage could not complete a pulmonary function test due to a tracheostomy, Jt. App'x at 308 (ALJ Dec. at 5), and that arterial blood-gas studies were qualifying under the federal standards, Jt. App'x at 308–09 (ALJ Dec. at 5–6).

The ALJ summarized the medical opinions of Dr. Simpao, Dr. Selby, Dr. Repsher, Dr. Houser, and Dr. Rasmussen. Jt. App'x at 309–17 (ALJ Dec. at 6–14). After examining Ramage, Dr. Simpao diagnosed legal pneumoconiosis and Chronic Obstructive Pulmonary Disease ("COPD"). Jt. App'x at 309–10 (ALJ Dec. at 6–7). Similarly, Dr. Houser concluded that Ramage was disabled and that coal dust exposure was a contributing factor along with Ramage's smoking. Jt. App'x at 314–16 (ALJ Dec. at 11–13). Particularly, Dr. Houser emphasized that it was impossible to distinguish between the damage due to coal dust as opposed to the damage due to smoking especially since the two activities have a cumulative effect. Jt. App'x at 315–16 (ALJ Dec. at 12–13). On the other hand, after his examination of Ramage, Dr. Selby concluded that Ramage did not have legal pneumoconiosis. Jt. App'x at 310–12 (ALJ Dec. at 7–9). Dr. Repsher served as a consulting physician. Jt. App'x at 312 (ALJ Dec. at 9). After reviewing medical records and Dr. Selby's report, Dr. Repsher admitted that Ramage was both disabled and had legal pneumoconiosis, but claimed that the legal pneumoconiosis was only a minor impairment which would not cause any disability. Jt.

---

[1] In *Alexander v. Freeman United Coal Mining Co.*, 2 BLR 1-497, the Board interpreted the rebuttable presumption found in 30 U.S.C. § 921(c)(4). The rebuttable presumption applies "if a miner was employed for fifteen years or more in one or more underground coal mines" and suffers from a disabling respiratory or pulmonary impairment. 30 U.S.C. § 921(c)(4). Moreover, the presumption can also apply to any miner where the Secretary of the Department of Labor "determines that conditions of [that] miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine." *Id.* The Board determined that "comparability of conditions" must be shown by any miner working in a surface mine. *Alexander*, 2 BLR 1-497, 1-501. However, miners working aboveground in an underground mine, like Ramage did for twenty-three years, work in an underground mine. *Id.* Thus, all of Ramage's years employed aboveground at an underground mine count towards the fifteen-year presumption. The ALJ credited Ramage with twenty-eight years of qualifying coal mine employment. Jt. App'x at 320 (ALJ Dec. at 17).

App'x at 312–14 (ALJ Dec. at 9–11). Finally, Dr. Rasmussen, another consulting physician, reviewed Ramage's treatment records and the reports prepared by all four of the previous physicians. Jt. App'x at 316–17 (ALJ Dec. at 13–14). Dr. Rasmussen agreed with the opinion of Dr. Houser that Ramage, due to smoking and coal mine work, suffers from COPD causing his total disability. Jt. App'x at 316–17 (ALJ Dec. at 13–14).

In his analysis, the ALJ found that Dr. Simpao's, Dr. Houser's, and Dr. Rasmussen's medical opinions were documented and reasoned. Jt. App'x at 321–22 (ALJ Dec. at 18–19). The ALJ also recognized that Dr. Selby's and Dr. Repsher's adverse opinions had to be weighed against these opinions supporting a finding for the claimant. Jt. App'x at 322–23 (ALJ Dec. at 19–20). The ALJ then criticized Dr. Selby's opinion as containing a "major flaw." Jt. App'x at 323 (ALJ Dec. at 20). Dr. Selby failed to measure $pCO_2$ and $pO_2$ after an exercise blood-gas test and also failed to explain how qualifying arterial blood gas studies supported his opinion. *Id.* Similarly, the ALJ determined that Dr. Repsher's opinion was not supported by the evidence he reviewed. *Id.* Particularly, the ALJ pointed out that Dr. Repsher referenced arterial blood-gas study results as revealing nonqualifying hypoxemia when the results that Dr. Repsher reviewed were qualifying under federal standards. *Id.*

After assigning varying weights to the opinions of these several medical providers, the ALJ found that Ramage had a totally disabling respiratory or pulmonary impairment. Jt. App'x at 321–24 (ALJ Dec. at 18–21). Thus, the ALJ determined that the fifteen-year presumption did apply. Jt. App'x at 324 (ALJ Dec. at 21). The ALJ then analyzed the evidence to conclude that Island Creek did not rebut the presumption either by showing that Ramage did not suffer from pneumoconiosis or by proving that Ramage's total disability was not caused in whole or in part by his coal mine employment. Jt. App'x at 324–31 (ALJ Dec. at 21–28). Having completed his analysis, the ALJ awarded benefits. Jt. App'x at 331–32 (ALJ Dec. at 28–29).

Island Creek appealed the award of benefits to the Benefits Review Board. The Board affirmed the ALJ's decision crediting Ramage with twenty-eight years of

qualifying coal mine employment.  *See* Jt. App'x at 338 (Benefits Review Board Decision and Order ("Bd. Dec.") at 4).  In doing so, the Board agreed that Ramage was not required to show substantially similar conditions even though he was an aboveground worker in an underground coal mine and cited *Muncy v. Elkay Mining Co.*, BRB No. 11-0187 BLA, 2011 WL 6140705 (Nov. 30, 2011) (*per curiam*) (published opinion), as well as *Alexander v. Freeman United Coal Mining Co.*, 2 BLR 1-497.  Jt. App'x at 338 (Bd. Dec. at 4).  The Board affirmed the ALJ's finding that Ramage was entitled to the rebuttable presumption.  *Id.*

On the existence of pneumoconiosis issue, after listing the multitude of errors Island Creek asserted were made by the ALJ, the Board rejected all but one.  *See* Jt. App'x at 338–41 (Bd. Dec. at 4–7).  The Board approved of the way the ALJ "considered the qualifications of the physicians . . . and permissibly determined that the opinions of Drs. Selby and Repsher were entitled to less weight than the opinions of Dr. Simpao and Rasmussen, despite their superior qualifications, based on flaws in their reasoning."  Jt. App'x at 340 (Bd. Dec. at 6).  Similarly, the Board upheld the ALJ's reliance on the preamble to the amended regulations.  *Id.*  The Board determined that the ALJ erred in deeming Dr. Repsher's opinion to be equivocal, but nonetheless approved of the ALJ's discrediting the opinion on different grounds.  Jt. App'x at 341 (Bd. Dec. at 7).  Finally, the Board concurred with the ALJ that the opinions of Dr. Simpao and Dr. Rasmussen were not equivocal.  *Id.*  In conclusion, the Board agreed that legal pneumoconiosis was established and that, consequently, Island Creek had failed to rebut the existence of pneumoconiosis.

On total disability causation, the Board stated that the ALJ's opinion provided the necessary reasoning for its conclusion.  Jt. App'x at 342 (Bd. Dec. at 8).  The Board approved of the ALJ's rejection of Dr. Selby's and Dr. Repsher's opinions because they did not diagnose legal pneumoconiosis, contrary to the ALJ's earlier findings.  *Id.*  Consequently, the Board affirmed the total disability causation finding, *id.*, and affirmed award of benefits, Jt. App'x at 343 (Bd. Dec. at 9).

This petition for review followed.

## II.  ANALYSIS

### A.  Standard of Review

We review the Board's legal conclusions de novo.  *Paducah Marine Ways v. Thompson*, 82 F.3d 130, 133 (6th Cir. 1996).  While we must affirm the Board's decision unless the Board has committed legal error or exceeded its scope of review, our review actually focuses on whether the ALJ's decision is supported by substantial evidence. *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997).  The ALJ must have applied the governing law correctly to reach a conclusion supported by substantial evidence.  *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "We do not reweigh the evidence or substitute our judgment for that of the ALJ."  *Tenn. Consol.*, 264 F.3d at 606.  We will not reverse the ALJ's decision merely because "we would have taken a different view of the evidence were we the trier of facts."  *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985).

To satisfy the substantial evidence standard, the ALJ must adequately explain why he weighed the evidence as he did.  *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011).  "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding."  *McCain v. Director, Office of Workers Compensation Programs*, 58 F. App'x 184, 201 (6th Cir. 2003).

### B.  Qualification for Fifteen-Year Presumption

Congress reinstated the fifteen-year rebuttable presumption by striking the last sentence of § 411(c)(4) of the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 921(c)(4).  *See* PPACA, Pub. L. No. 111-148, § 1556(a).  That stricken sentence had said, "[t]he provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981."  *Vision*

*Processing, LLC v. Groves*, 705 F.3d 551, 554–55 (6th Cir. 2013) (internal quotation marks omitted).  Therefore, under the revived provision, "if a miner was employed for fifteen years or more in one or more underground coal mines" and "demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4).  The presumption also applies to any miner where the Secretary of the Department of Labor "determines that conditions of [that] miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine." *Id.*

Based on Ramage having worked for five years underground and twenty-three years on the surface of Island Creek's underground coal mining operation, the ALJ determined that Ramage did qualify for this rebuttable presumption.  Jt. App'x at 320 (ALJ Dec. at 17).  The ALJ relied on the Board's decision in *Alexander v. Freeman United Coal Mining Co.*, 2 BLR 1-497.  Jt. App'x at 320 (ALJ Dec. at 17).  In that case, the Board interpreted the Act and concluded that "the type of mine (underground or surface), rather than the location of the particular worker (surface or below the ground), is the element which determines whether a claimant is required to show comparability of conditions." *Alexander*, 2 BLR at 1-502.  In affirming this determination, the Board agreed that Ramage was not required to show substantially similar conditions even though he was an aboveground worker in an underground coal mine and cited *Muncy*, 2011 WL 6140705.  Jt. App'x at 338 (Bd. Dec. at 4).

Island Creek makes two arguments for why this determination ought be overturned.  First, in its opening brief, Island Creek argues that the Board has reversed itself in *Mosko v. Eighty Four Mining Co.*, BRB No. 10-0672 BLA, 2012 WL 7997361 (Nov. 9, 2012) (*en banc*).[2]  Second, after being presented by the respondents with the

---

[2]The Board has not been clear whether it still considers aboveground employment at an underground coal mine not to require a showing of comparability of conditions. *Compare Mosko*, 2012 WL 7997361, at *2 (remanding to the ALJ for a determination of how a miner's aboveground work was substantially similar to underground work in a case where the employer stipulated that miner worked aboveground at an underground coal mine), *with Muncy*, 2011 WL 6140705, at *5 (holding that "where a miner has worked aboveground at an underground coal mine, he or she need not demonstrate that the work conditions there were substantially similar to conditions in an underground mine to have the benefit

argument that the BLBA's implementing regulations define an underground coal mine to include the location where Ramage worked, Island Creek argues that such regulations are an unreasonable construction of the statute.

The relevant statutory provision reads in whole:

[I]f a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

---

of the [fifteen-year] presumption). *Muncy*, 2011 WL 6140705, clearly held that a miner working aboveground at an underground coal mine is not required to prove substantially similar conditions. *Id.* at *5. Despite being aware of their previous countervailing precedents, the Board in *Mosko*, 2012 WL 7997361, did not explicitly overturn them nor even criticize them. Instead, *Mosko* stated, "[b]ecause the administrative law judge has not adequately explained his finding that the miner's aboveground work was substantially similar to underground mining, his finding of fifteen years of qualifying coal mine employment does not satisfy the standard of the APA." *Id.* at *2. This statement did not require aboveground workers at underground mines to demonstrate substantially similar work conditions, but held merely that the ALJ failed to explain adequately why he found that the aboveground work of this particular miner was substantially similar. *Id.* ("Specifically, on remand, the administrative law judge must explain how he determined that the miner's aboveground work was 'substantially similar' to underground coal mine employment pursuant to Section 411(c)(4)."). In fact, the Board's instructions to the ALJ on remand in *Mosko* were to evaluate the miner's employment in light of *Muncy*, 2011 WL 6140705, and several earlier cases. *Id.* This formulation suggests to us that the Board in *Mosko* faulted the ALJ for failing to explain adequately why he credited the claimant's aboveground work rather than reversed a long-established view.

This conclusion accords with the Board affirming the ALJ's finding that Ramage spent at least fifteen years working in an underground coal mine without a comparability of conditions analysis in this case. Jt. App'x at 338 (Bd. Dec. at 4). Under these circumstances, we reject the contention that *Mosko* changed this long-established Board interpretation and conclude that the Board still does consider aboveground employment at an underground coal mine to warrant the presumption without additional proof.

30 U.S.C. § 921(c)(4). After notice-and-comment rulemaking, the Department of Labor has defined an "underground coal mine" as "a coal mine in which the earth and other materials which lie above and around the natural deposit of coal (i.e., overburden) are not removed in mining; including all land, structures, facilities, machinery, tools, equipment, shafts, slopes, tunnels, excavations and other property, real or personal, appurtenant thereto." 20 C.F.R. § 725.101(a)(30). This definition, as long as it is a permissible one, clearly supports a finding that Ramage worked in an underground coal mine because it is undisputed that he worked for twenty-three years on the surface of an underground coal mine.

We must accept the agency's definition of an underground coal mine as long as Congress has not spoken directly on the issue and the agency's interpretation is reasonable. *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Here, Congress has not explicitly defined the term "underground coal mine." The interpretation that it includes the land and structures above is reasonable in light of Congress's definition of a "coal mine." *See* 30 U.S.C. § 802(h)(2) (defining a "coal mine" to include "an area of land and all structures, facilities, . . . and other property, real or personal, placed upon, under, or above the surface of such land"[3]). Therefore, we conclude that no showing of comparability of conditions is necessary for an aboveground employee at an underground coal mine. *See Kanawha Coal Co. v. Director, Office of Workers' Compensation Programs*, No. 12-2566, ___ F. App'x ___, 2013 WL 4828724, at *1–2 (4th Cir. 2013) (approving on *Chevron* grounds the Department of Labor's interpretation). Consequently, the ALJ's conclusion, affirmed by the Board, that Ramage is entitled to the fifteen-year presumption was proper.

## C. ALJ's Determinations

Island Creek challenges three determinations made by the ALJ in evaluating the evidence. The first two of these arguments dispute the ALJ's credibility assessments of

---

[3]This definition specifically lists aboveground facilities "used in . . . the work of preparing the coal so extracted, and includes custom coal preparation facilities." 30 U.S.C. § 802(h)(2) (defining "coal mine"). Ramage testified that he ended his employment as chief preparation foreman. Jt. App'x at 282.

the medical experts. For such credibility determinations and the varying weights assigned to medical opinions, we defer to the ALJ whenever his assessment is supported by substantial evidence. *See Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 231 (6th Cir. 1994). Determining whether a "doctor's report was 'sufficiently documented and reasoned[]' [is] a credibility decision we have expressly left to the ALJ." *Tennessee Consol. Coal Co. v. Crisp*, 866 F.2d 179, 185 (6th Cir. 1989). In its third argument that the ALJ erred, Island Creek contends that the ALJ failed to analyze whether Island Creek had rebutted the fifteen-year presumption by showing that Ramage's disability was not caused by his coal mine dust exposure.

### 1. ALJ's Assessments of Dr. Simpao and Dr. Rasmussen

First, Island Creek asserts that the ALJ erred by crediting the opinions of Dr. Simpao and Dr. Rasmussen because, according to Island Creek, the opinions were equivocal. Equivocal opinions ought to be discounted by the ALJ. *See Griffith v. Director, Office of Workers' Compensation Programs*, 49 F.3d 184, 186 (6th Cir. 1995) (affirming ALJ's decision to discredit physician's testimony as equivocal). Island Creek's argument rests on bits and pieces of the testimony and of the ALJ's determination. However, when the record is examined as a whole, it is clear that the opinions of these two doctors were not equivocal and that the ALJ's decision to credit them was reasonable.

Island Creek relies on Dr. Simpao's statement that he could not determine the percentage of Ramage's COPD caused by coal dust exposure as opposed to smoking. It also points to Dr. Simpao's answer that it is possible for Ramage to have the same respiratory impairment even if Ramage had never worked in a coal mine. Together, Island Creek argues, these two statements suggest that Dr. Simpao believes that it is possible that all of Ramage's respiratory impairment is the result of smoking. This limitation in diagnosing perfectly is not, however, Dr. Simpao's entire diagnosis. While Dr. Simpao agrees that the symptoms *could* be caused by smoking alone, his medical opinion is clear that both Ramage's coal dust exposure and Ramage's long smoking history contributed to his COPD. *See* Simpao Report, Jt. App'x at 6–11; Deposition of

Dr. Valentino S. Simpao, Jt. App'x at 41–61.  In both his report and at his deposition, Dr. Simpao diagnoses legal pneumoconiosis and COPD and states that coal dust exposure was a significant cause of the legal pneumoconiosis with smoking as an aggravating factor.  Jt. App'x at 9 (Simpao Report at 4); Jt. App'x at 45, 59 (Simpao Dep'n at 5, 19).  The ALJ found that Dr. Simpao "attributed the etiology of the disease to dust exposure while noting that claimant's significant smoking history is an aggravating factor."  Jt. App'x at 309 (ALJ Dec. at 6).  This finding by the ALJ was based on substantial evidence and ought not to be disturbed.

Thus, the ALJ correctly found that Dr. Simpao diagnosed that coal dust exposure and smoking were both to blame for Ramage's COPD.  Such an opinion is far from equivocal.  *See Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000) (reversing an ALJ's discounting of medical reports where "both doctors were unequivocal that coal dust exposure aggravated [the miner's] pulmonary problems").  The ALJ did not err in relying on it.

Similarly, Island Creek argues that Dr. Rasmussen's opinion was equivocal because he was unable to distinguish between the effects of smoking and coal dust exposure and because, according to Island Creek, he stated that there is no proof that Ramage's COPD is caused by coal dust.  Dr. Rasmussen, a consulting physician, provided a report that concluded in whole:

> While there are no pulmonary function studies to attempt to quantify Mr. Ramage's chronic lung disease severity, there can be little doubt that he does suffer from a severe and disabling chronic obstructive lung disease. Although there is no *proof* of a relationship between cigarette smoking and his chronic obstructive lung disease since only a minority of such smokers ever develop chronic lung disease it would not be medically sound to assume lack of a smoking effect. By the same token while there is no proof of coal mine dust induced lung disease in Mr. Ramage, it would be medically inappropriate to believe that his coal mine dust exposure did not contribute even though the majority of such exposures would not result in impairment. There is no way physical, physiologic or radiographic by which a distinction can be made between the identical forms of COPD caused by smoking and coal mine dust. The only rational conclusion is that both smoking and mine dust are important contributing causes of Mr. Ramage's chronic lung disease.

> In my opinion, Mr. Ramage suffers a totally disabling chronic obstructive lung disease, which is the consequence of both his extensive cigarette smoking and his coal mine dust exposure and that he has legal pneumoconiosis, (i.e. COPD/emphysema caused in part by coal mine dust exposure) which is a significant contributing cause of his chronic lung disease.

Letter from D.L. Rasmussen to Brent Yonts, September 16, 2009, Jt. App 'x at 247. When read in context, Dr. Rasmussen's statement that "there is no proof of coal mine dust induced lung disease in Mr. Ramage" is far from an equivocal opinion. It is simply an aside that direct proof cannot be obtained in this case. In fact, Dr. Rasmussen could not be more explicit in diagnosing "a totally disabling chronic obstructive lung disease, which is the consequence of both his extensive cigarette smoking and his coal mine dust exposure." The lack of direct evidence does not deter Dr. Rasmussen because he bases his diagnosis on the findings and conclusions of treating physicians and the results of scientific studies. His opinion regarding the cause of Ramage's COPD is far from equivocal. The ALJ did not err by relying on Dr. Rasmussen's opinion.

### 2. ALJ's Assessments of Dr. Selby and Dr. Repsher

Second, Island Creek argues that the ALJ erred by discrediting the opinions of Dr. Selby and Dr. Repsher that coal dust exposure did not cause Ramage's total disability. Aside from the ALJ's criticism of Dr. Selby for failing to measure $pCO_2$ and $pO_2$ after an exercise blood-gas test and for failing to explain how qualifying arterial blood-gas studies supported his opinion, Jt. App'x at 323 (ALJ Dec. at 20), the ALJ also took issue with each of the bases for Dr. Selby's opinion. Jt. App'x at 325–27 (ALJ Dec. at 22–24). The ALJ criticized Dr. Selby for relying on the fact that Ramage has bullous emphysema and no radiographic evidence of pneumoconiosis to conclude that Ramage's COPD is based on smoking rather than coal dust exposure. Jt. App'x at 326 (ALJ Dec. at 23). The ALJ used Department of Labor determinations to conclude that, because coal mine dust exposure may cause bullous emphysema without radiographic evidence, Dr. Selby's opinion that only smoking caused Ramage's emphysema and COPD is not credible. Jt. App'x at 326–27 (ALJ Dec. at 23–24).

Here, the accuracy of the ALJ's assessment can be debated, but is irrelevant to our ultimate conclusion. Island Creek does not challenge that the ALJ was correct in criticizing two other bases for Dr. Selby's opinion—that Ramage was particularly vulnerable to smoking induced emphysema, Jt. App'x at 326 (ALJ Dec. at 23), and that Ramage's treatment with bronchodilators suggests his emphysema was caused by smoking, Jt. App'x at 325 (ALJ Dec. at 22). Thus, some discounting of Dr. Selby's opinion was appropriate, and we will not second-guess the ALJ's ultimate weighing of medical opinions.

Similarly, the ALJ determined that Dr. Repsher's opinion whether coal dust exposure caused Ramage's COPD was equivocal and, thus, entitled to little weight. Jt. App'x at 327–28 (ALJ Dec. at 24–25). The ALJ's determination was based on Dr. Repsher reversing his position and stating that Ramage does suffer from legal pneumoconiosis after initially claiming that any miner's COPD would not be caused by coal dust exposure. Jt. App'x at 328 (ALJ Dec. at 25). The Board disagreed with this portion of the ALJ's reasoning. Jt. App'x at 341 (Bd. Dec. at 7). The Board concluded that Dr. Repsher was consistent and not equivocal. *Id.* However, the Board agreed with the ALJ that Dr. Repsher's opinion deserved less weight because the opinion was based on the mistaken belief that coal dust exposure does not cause a decline in lung function in most miners, which is contrary to the determinations of the Department of Labor. *Id.* Here again, the ALJ gave multiple reasons for discounting Dr. Repsher's opinion. We can discern why the ALJ discounted Dr. Repsher's opinion, and we conclude that such discounting was based on substantial evidence.

### 3. Rebuttal of Fifteen-Year Presumption[4]

Island Creek argues that the ALJ erred because he did not analyze whether Island Creek had rebutted the fifteen-year presumption by showing that Ramage's coal mine

---

[4]In its Reply Brief, Island Creek for the first time argues that its ability to rebut the fifteen-year presumption was improperly restricted to only two methods and that the wrong standard for rebutting the causation presumption was applied. There is no evidence that the ALJ in this case restricted Island Creek's rebuttal methods. Moreover, the ALJ's finding that Island Creek did not rebut the causation presumption clearly satisfied either potential standard. For more detailed analyses of these arguments, see *Big Branch Resources, Inc. v. Ogle*, No. 13-3251, ___ F.3d ___ (6th Cir. 2013), also decided today.

employment did not cause his total disability. The ALJ stated that the issues in determining whether Ramage suffers from pneumoconiosis and whether his mining employment caused his total disability are "essentially the same," that "the expert opinions on one issue also address[] the other," and that for the same reasons he finds the opinions of Dr. Rasmussen and Dr. Simpao to be worthy of greater weight than the opinions of Dr. Selby and Dr. Repsher. Jt. App'x at 331 (ALJ Dec. at 28).

While the ALJ's reasoning regarding total disability causation is brief, it does clearly outline on what his decision rests. The ALJ has communicated that he credits certain experts and discredits others for the reasons outlined before. Moreover, he notes that he can afford less weight to expert opinions that found no legal pneumoconiosis contrary to his findings. *See Adams v. Director, Office of Workers Compensation Programs*, 886 F.2d 818, 826 (6th Cir. 1989). Thus, we can discern the opinions on which the ALJ relies and why. Moreover, the two issues—the existence of legal pneumoconiosis and disability causation—are closely related as legal pneumoconiosis is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," 20 C.F.R. § 718.201(a)(2), where "a disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b).

Because Ramage was found to be totally disabled and because all medical experts agreed that Ramage's pulmonary problems were a significant cause of his total disability, the only question remaining was whether coal mine employment caused the pulmonary problems. Thus, the causation question was whether Ramage had legal pneumoconiosis—which boiled down to whether Ramage's "pulmonary impairment [was] significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). The answer to the causation question, in this case, also completed the causation chain from coal mine employment to legal pneumoconiosis which caused Ramage's pulmonary impairment that led to his disability.

Under these circumstances, the ALJ did not err in concluding that Island Creek did not rebut the fifteen-year presumption.

**D.  Use of 2010 Statutory Amendments Without Implementing Regulations**

Finally, Island Creek argues that application of the 2010 statutory amendments to award benefits before the Department of Labor issued regulations was premature. This argument is simply wrong and can be disposed of quickly.

There is no need to wait for an update to the relevant fifteen-year presumption regulation, 20 C.F.R. § 718.305, because the only effect of the statutory amendments on the regulation is clearly spelled out in the statute itself.  *See Parker-Hannifin Corp. v. Comm'r*, 139 F.3d 1090, 1099 (6th Cir. 1998) (finding a statute to be "self-executing" because "it sets forth the requirements that [a taxpayer] must meet in order to claim a deduction" and noting that "[t]he absence of regulations, while not helpful, is beside the point").  The PPACA reinstated the fifteen-year rebuttable presumption by striking the last sentence of § 411(c)(4) of the BLBA, 30 U.S.C. § 921(c)(4).  *See* Pub. L. No. 111-148, § 1556(a).  That stricken sentence had said, "[t]he provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981."  *Vision Processing*, 705 F.3d at 554–55 (internal quotation marks omitted).  The regulations codified this stricken sentence by specifying that "[t]his section is not applicable to any claim filed on or after January 1, 1982." 20 C.F.R. § 718.305(e).  Thus, the January 1, 1982, limitation is stricken.  Moreover, the statute provided for its application to claims filed after January 1, 2005, which are pending on or after the enactment of the PPACA.  *See* Pub. L. No. 111-148, § 1556(c). No regulations are necessary before this congressional enactment can be used as the basis for awarding benefits.[5]

---

[5]New regulations implementing the 2010 legislative changes were published on September 25, 2013, with an effective date of October 25, 2013.  *See* 78 Fed. Reg. 59102 (Sept. 25, 2013).  These new regulations delete § 718.305(e) and clarify that these new regulations apply to all claims filed after January 1, 2005, and pending on or after March 23, 2010.  77 Fed. Reg. 19456, 19460 (Mar. 30, 2012).  This opinion is in accord with the new regulations.

### III.  CONCLUSION

We hold that the ALJ did not err by crediting, for the purposes of the fifteen-year presumption, the claimant's aboveground employment at an underground coal mine without a comparability of conditions determination.  Furthermore, both the ALJ's crediting and discounting of physicians' opinions and the ALJ's conclusion that Island Creek did not rebut the fifteen-year presumption were based on substantial evidence and in accordance with applicable law.  Finally, because implementing regulations are unnecessary where, as here, the statutory amendments are self-executing, the award of benefits is not premature.  For the foregoing reasons, we **DENY** the petition for review.