NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0274n.06

No. 20-3870

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ISLAND CREEK COAL COMPANY,

 Petitioner,

v.

WALLACE H. UZZLE,

 Respondent,

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

 Party-in-Interest.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jun 03, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR

BEFORE:   SUTTON, Chief Judge; DAUGHTREY and GRIFFIN, Circuit Judges.

 MARTHA CRAIG DAUGHTREY, Circuit Judge. Island Creek Coal Company, the last employer of now-retired coal miner Wallace H. Uzzle, petitions for review of a decision of the United States Department of Labor's Benefits Review Board (BRB) that granted black lung benefits to Uzzle. In its petition, Island Creek asserts first that Uzzle did not file his claim for benefits in a timely manner. The company also contends that the administrative law judge erred in discrediting the opinions of two doctors who supported Island Creek's position that Uzzle, despite working in underground coal mines for 26 years, could not establish that he was permanently disabled as a result of legal pneumoconiosis stemming from coal mine employment. We find no merit to these arguments put forward by Island Creek and thus deny the petition for review.

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties have stipulated that Uzzle worked at least 26 years in coal mine employment, all of which were spent in underground mines working first as a shot firer and roof bolter, and then, for approximately 23 years, as a section foreman. The parties further stipulated that Island Creek is the party responsible for any payments that would be due to Uzzle pursuant to the provisions of the Black Lung Benefits Act, 30 U.S.C. §§ 901–944.

During an administrative hearing, Uzzle testified that he retired from mining in 1999 at the age of 57. During his years in the mines, Uzzle routinely lifted various objects weighing between 20 and 80 pounds and walked six or seven miles per day in the mines, usually in a stooped posture due to the low height of the mine ceilings. Not surprisingly, Uzzle was exposed to significant amounts of coal mine dust while performing his job, noting that his "skin was totally black" at the end of the workday. Moreover, Uzzle's wife would have to wash his work clothes a couple of times in order to remove all the dust and grime, and she would have to wash the couple's bed linens "[e]very couple days" because the sheets would be dirty despite Uzzle showering after returning home.

During his time working in the mines, Uzzle began coughing, wheezing, and, during a normal day, spitting up "about a quarter of a cup or so" of grayish liquid. Those health conditions have continued into his retirement years, and as a result, Uzzle now sleeps on a "big, double pillow" and is forced to sleep in a recliner "[t]wo to three days a week" so that he does not "gasp for breath." He further testified that he takes various medications to help him breathe, that he uses oxygen at night and occasionally during the day, especially if the temperature is extremely hot or cold, and that his respiratory problems have forced him to give up various activities. He can now walk only 600 feet without stopping due to shortness of breath, can climb only about three or four

steps without stopping for a breath, and has to rest for a time after showering before getting dressed.

Because of those conditions, Uzzle filed a Kentucky Application for Resolution of Coal Workers' Pneumoconiosis Occupational Disease Claim in December 2002, relying upon a 1999 x-ray report by Dr. D.W. Whitehead and interpretations of that x-ray by three B-readers[1]. There was no consensus among the B-readers, however, that the x-ray indicated the presence of pneumoconiosis. Consequently, the state administrative law judge dismissed Uzzle's claim for benefits under Kentucky's administrative procedures. Uzzle then filed a federal claim for benefits under the Black Lung Benefits Act, which was received by the United States Department of Labor's Office of Workers' Compensation Programs on June 24, 2011. Following an initial award of benefits by the district director, Island Creek requested a formal hearing before an administrative law judge, alleging not only that Uzzle's claim for benefits was not filed within the requisite time period, but also that Uzzle failed to establish that any respiratory disability he suffered was due to pneumoconiosis.

At the hearing, both Uzzle and Island Creek offered documentary evidence, but Uzzle was the only witness who testified in person before the administrative law judge. Ultimately, the administrative law judge concluded that Uzzle's 2011 federal claim was timely and that Uzzle had established entitlement to black lung benefits through evidence showing that he was totally disabled due to pneumoconiosis arising from his coal mine employment. The BRB affirmed the finding of Uzzle's entitlement to benefits, but two of the three BRB members concluded that the administrative law judge, in addressing the timeliness of the claim, failed to consider all relevant

---

[1] A B-reader is a physician certified by the National Institutes of Occupational Safety and Health to have "demonstrated a proficiency in evaluating chest x-rays and in classifying such x-rays for pneumoconiosis."

testimony and to explain adequately the reasons for his decision on that issue.[2]  The BRB thus remanded the matter for further consideration of the timeliness question.

On remand, the administrative law judge reviewed all evidence presented to him and again found that Uzzle timely filed his claim for benefits under the Black Lung Benefits Act.  The BRB reviewed once more the administrative law judge's discussion of the issue, affirmed the "finding that employer failed to rebut the presumption that this claim was timely filed," and affirmed the award of benefits.  From that administrative decision, Island Creek now petitions for review, challenging both the BRB's decision on the timeliness issue and the finding that Uzzle had established entitlement to black lung benefits.[3]

## DISCUSSION

**Standard of Review**

In addressing a petition for review in a black-lung-benefits case, we review *de novo* any legal conclusions reached by the BRB.  *Shepherd v. Incoal, Inc.*, 915 F.3d 392, 398 (6th Cir. 2019).  "Even so, 'our review actually focuses on whether the ALJ's decision is supported by substantial evidence.'"  *Id.* (quoting *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013)).  "Review on appeal should be focused on whether the ALJ—not the Board—had substantial evidence upon which to base his or her decision."  *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997) (citation omitted).

---

[2] The third BRB member dissented in part, believing that Island Creek failed to rebut a regulatory presumption that Uzzle timely filed his federal claim.

[3] On remand to the administrative law judge, Island Creek, relying upon the decision of the United States Supreme Court in *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018), argued that the matter should be heard by a different administrative law judge appointed in accordance with the Appointments Clause of the United States Constitution, art. II, § 2, cl. 2.  Both the administrative law judge and the BRB found the challenge forfeited because Island Creek did not raise the issue when the case first was before the administrative law judge or in the prior appeal to the BRB.  *See Joseph Forrester Trucking v. Dir., Off. of Workers' Comp. Programs*, 987 F.3d 581, 588 (6th Cir. 2021) (holding that "regulatory provisions require that an Appointments Clause challenge be raised before the ALJ to preserve the issue for the Board's review").  Here, though, Island Creek specifically claimed in its reply brief that it is not presenting an Appointments Clause argument.  The coal company thus affirmatively waived this claim.

The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). Because such a standard of review is so deferential, as long as the administrative law judge adequately explains "the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence," *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011), we may not reweigh the evidence, substitute our judgment for that of the administrative law judge, or reverse the decision of the administrative law judge simply because "we would have taken a different view of the evidence were we the trier of facts." *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985).

**Relevant Features of the Black Lung Benefits Act**

As we explained in *Shepherd*:

The [Black Lung Benefits] Act, and the regulations promulgated pursuant to it, define "pneumoconiosis" as "a chronic disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. §§ 718.201(a) and 725.101(a)(25). "This definition includes both medical, or 'clinical', pneumoconiosis and statutory, or 'legal', pneumoconiosis." 20 C.F.R. § 718.201(a). The regulations further define "clinical pneumoconiosis" as "those diseases recognized by the medical community as pneumoconioses, *i.e.*, the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). "Legal pneumoconiosis," however, has a much broader definition, including, but "not limited to, any chronic restrictive or obstructive pulmonary disease" "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(2) and (b).

*Shepherd*, 915 F.3d at 399.

In 2010, with the passage of the Patient Protection and Affordable Care Act (ACA), Congress reinstated what had come to be known as the "15-year presumption," whereby "if a miner

was employed for fifteen years or more in one or more underground coal mines, . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis . . . ." 30 U.S.C. § 921(c)(4). To rebut that statutory presumption, a coal mine operator must establish either that the miner does not, or did not, have pneumoconiosis, or that no part of the miner's respiratory or pulmonary total disability was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.305(d)(1)(i) and (ii); 20 C.F.R. § 718.201(b).

**Timeliness of Uzzle's Claim**

Island Creek first seeks to overturn the administrative grant of benefits to Uzzle by arguing that his claim under the Black Lung Benefits Act was not filed in a timely manner. Pursuant to the provisions of 30 U.S.C. § 932(f), a claim for benefits under the Act must be filed either within three years after March 1,1978, or within three years after "a medical determination of total disability due to pneumoconiosis," whichever occurs later. It is not enough, however, that the medical determination be made; that determination also must be "communicated to the miner or a person responsible for the care of the miner." 20 C.F.R. § 725.308(a). Furthermore, the relevant regulations set forth a rebuttable presumption that all claims are filed within the applicable time period. 20 C.F.R. § 725.308(b). Consequently, an employer seeking to rebut that presumption must show that the required communication was made to the miner more than three years before the filing of a claim for benefits. 30 U.S.C. § 932(f); 20 C.F.R. § 725.308(a); *Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 718 F.3d 590, 594–95 (6th Cir. 2013).

In its effort to rebut the presumption of the timeliness of Uzzle's benefits claim, Island Creek cites the following colloquy with Uzzle during the miner's testimony at the evidentiary hearing before the administrative law judge:

> Q  One of the things that we need to know is if a doctor has ever told you that you have a breathing problem that is totally disabling due to coal workers' pneumoconiosis or black lung disease.  Has a doctor ever told you that?
> A  Yes.
> Q  Do you remember what doctor told you that?
> A  Dr. Houser.
> Q  Do you remember when Dr. Houser told you you were totally disabled by a breathing problem caused by black lung disease?
> A  I've been examined by Dr. Houser three different times.  Each time, he's told me that.
> Q  Do you remember about when those examinations were?
> A  One would probably be around 2000, 2001.
> Q  Okay.  That was the first one?
> A  Might've been the middle one.  The other one would've been back in the nineties.
> Q  But just to make sure I understand, he told you that you had black lung disease –
> A  Yes.
> Q  – that was causing disabling pulmonary problems?
> A  Yes.
> Q  He told you you couldn't go back to work because of your breathing problems?
> A  No, he didn't tell me that.
> Q  Did he tell you your breathing was bad?
> A  Yes.
> Q  Did he tell you that it would interfere with your ability to work?
> A  I can't recall.
> Q  Okay.  But he has told you the same thing each time you've seen him?
> A  Yes.

Given that Uzzle filed his federal black-lung-benefits claim in 2011, it is easy to understand why Island Creek would cite this excerpt to show that a doctor first told Uzzle no later than 2001—far longer than three years before the filing of the claim—that the miner was totally disabled due to a respiratory ailment that was caused by coal workers' pneumoconiosis.  Even though the administrative law judge originally determined that Uzzle was a credible witness, on remand from

the BRB, the administrative law judge reviewed the miner's testimony "in its entirety" rather than focusing on only that testimony quoted above. Doing so, the administrative law judge found that Uzzle's "testimony is inconsistent, unreliable and is without support from the evidentiary record, and is therefore insufficient to establish that a diagnosis of totally disabling coal workers' pneumoconiosis was communicated to him by Dr. Houser."

The administrative law judge buttressed his decision on remand by citing several instances in which Uzzle's testimony was contradicted by other evidence in the administrative record. Most telling, however, was the fact that no evidence in the record gives any indication that Houser—the physician who determined that Uzzle was totally disabled as a result of a respiratory condition brought on by exposure to coal dust during coal mine employment—examined Uzzle before 2012. In fact, in his August 6, 2012, report, Houser notes that "Mr. Uzzle was seen in my office today" and makes no mention that Houser had any prior contact with the miner. Furthermore, in Houser's later deposition testimony, he reiterated that he examined Uzzle in the summer of 2012, that his August 2012 report was the only report he prepared regarding Uzzle, and that Uzzle's medical history was obtained not from any prior examinations by Houser, but rather from Uzzle's own recollection at that 2012 appointment.

Such information supports the conclusion that Uzzle was inconsistent and imprecise in his testimony at the evidentiary hearing. Additionally, the record before us indicates that the only physician who examined Uzzle during the time period that the miner first claimed to have been told that he was totally disabled due to pneumoconiosis—the 1990s, 2000, and 2001—was Dr. Douglas Johnson. Indeed, Johnson's records indicate that he examined Uzzle numerous times between August 1999 and October 2011, but never during that 12-year period did he diagnose Uzzle with pneumoconiosis. During some office visits, however, Johnson did diagnose Uzzle with

memory loss or mild dementia, conditions that could explain further the miner's confusion at the evidentiary hearing regarding the timing of the communication of information regarding his pneumoconiosis and disability diagnoses.

In any event, examination of the entire administrative record leaves no doubt that substantial evidence supports the administrative law judge's determination that no physician informed Uzzle in 2001, or at any time prior to 2012, that the miner was totally disabled as a result of pneumoconiosis caused by exposure to coal mine dust. More important for our purposes, other than Uzzle's testimony, which plainly is inconsistent with all documentary evidence, Island Creek can point to nothing in the administrative record to support its assertion that Uzzle's claim was untimely. The coal company thus has failed to rebut the presumption that the claim was filed in a timely manner.

**Challenge to the Administrative Law Judge's Weighing of Evidence**

As we have noted, the passage in 2010 of the ACA reinstated the "15-year presumption" in black-lung-benefits cases. Consequently, if an individual worked in underground coal mines for at least 15 years, and if the miner is totally disabled as a result of a respiratory or pulmonary condition, a rebuttable presumption arises that the miner is disabled due to pneumoconiosis. *See* 30 U.S.C. § 921(c)(4).

In its effort to rebut the application of the presumption in this case, Island Creek contends that any impairment from which Uzzle suffers has no connection whatsoever to his coal mine employment. The company's argument in this regard is based upon the medical opinions of Drs. Jeff Selby and Stephen Basheda that Uzzle's disability is traceable only to an asthmatic condition that was not exacerbated by exposure to coal dust. Thus, Island Creek now insists that the

administrative law judge's decision to discredit the opinions of those two doctors was irrational, unsupported by substantial evidence, and contrary to law.

In discussing whether the medical evidence supported a finding that Uzzle had legal—as opposed to clinical—pneumoconiosis, the administrative law judge referred to the reports and/or deposition testimony of five doctors: Glen Baker, Stephen Basheda, Sanjay Chavda, William Houser, and Jeff Selby. Four of the five physicians agreed that a prior chest injury suffered by Uzzle could explain why testing showed that the miner had some lung restrictions.[4] As explained by the administrative law judge, however, "all the physicians agree that [Uzzle's] lung disease is far more extensive than just the restrictive component that may have been the result of his old crush injury, which resulted in a broken sternum, broken ribs, and a lung puncture." In fact, all five doctors noted that Uzzle also suffered from an *obstructive* impairment in his lungs. But the opinions by the various doctors regarding the etiology of such an obstructive impairment are what separates the positions of the company and the claimant regarding the existence of legal pneumoconiosis in this case.

Island Creek's experts, Selby and Basheda, believed that any obstructive lung impairment that could render Uzzle totally disabled resulted from asthma, which was not caused in any way by exposure to coal dust during coal mine employment. On the other hand, neither Baker nor Chavda nor Houser gave any indication that Uzzle properly could be diagnosed with asthma. Each of the three doctors supporting the miner's claim offered a professional medical opinion that Uzzle instead suffered from chronic obstructive pulmonary disease (COPD) caused by both cigarette smoking and by exposure to coal dust. Despite the recognition of the dual etiologies, each of those three physicians also claimed emphatically that Uzzle's exposure to coal mine dust during more

---

[4] Baker testified in his deposition that he could not recall whether Uzzle had discussed with him the particulars of any mining accident.

than 26 years of underground mining was a substantial contributing factor to the miner's total respiratory disability.

Faced with the divergent explanations for the impairment from which Uzzle suffered, the administrative law judge found more credible the opinions of Baker, Chavda, and Houser. As the administrative law judge explained, "[T]his case comes down to a single question, one on which the physicians disagree: Are the Claimant's symptoms related to COPD (which could have been caused by coal mine dust and/or cigarette smoking) or are they related to undertreated asthma, which is primarily a genetic condition?"

Despite Selby and Basheda's opinions that Uzzle suffered from asthma, no other doctor who treated the miner made a similar definitive or consistent diagnosis of asthma. Although it is true that Douglas Johnson, who treated Uzzle from at least August 1999 until October 2011, did note in a March 19, 2003, report that Uzzle's asthma was "stable," none of Johnson's other 33 reports during that time period makes any mention of the miner suffering from or being diagnosed with asthma. In fact, among those 33 reports, the only ones that refer to any lung conditions at all reference diagnoses of pleurisy and COPD.

Furthermore, although Uzzle claimed during his testimony that Dr. Kuldeep Pandit, a pulmonologist, once diagnosed him with asthma, the vast majority of Pandit's reports regarding Uzzle's condition reference a diagnosis of COPD rather than asthma. In fact, Pandit's only references to an asthma diagnosis are found in reports of only seven of the 23 visits Uzzle made to Pandit. And even those seven reports mention only the doctor's impression that Uzzle suffers from *COPD* "with underlying asthmatic component." As found by the administrative law judge, however, "[i]t is not at all clear [that such] findings . . . mean[] that the Claimant has asthma." And although Pandit diagnosed Uzzle with chronic asthmatic bronchitis at three other visits, Houser

explained during his own deposition testimony that "[t]he fact that [Uzzle] had occasional sputum production would indicate by history that he would not generally qualify for a clinical diagnosis of chronic bronchitis."

Additional refutations of Selby and Basheda's asthma diagnoses were offered by Baker and Chavda. For example, Baker concluded that the evidence did not support a diagnosis of asthma because Uzzle had no history of childhood asthma. And Chavda also discounted the possibility that Uzzle had asthma because of Uzzle's daily production of sputum and Uzzle's history of exercise-induced hypoxia—or insufficient transportation of oxygen through the body—two conditions not typically found in asthmatics.

In assessing the evidence before him, the administrative law judge was presented with conflicting reports and testimony indicating the Uzzle's totally disabling respiratory or pulmonary impairment was caused either by asthma or by COPD resulting from a combination of cigarette smoking and exposure to coal mine dust. In resolving that conflict, the administrative law judge relied on testimony from medical professionals that explained why the asthma diagnosis was not supported by the evidence in the administrative record. Thus, the administrative law judge's decision to discredit the opinions of the experts upon whom Island Creek relies to support its position was explained adequately and cannot be considered irrational, unsupported by the evidence, or contrary to law.

## CONCLUSION

The 15-year presumption reinstated by the enactment of the ACA provides that a miner who is totally disabled as a result of a respiratory or pulmonary impairment and who was employed for at least 15 years in an underground coal mine is presumed, subject to rebuttal, to be totally disabled due to pneumoconiosis and thus entitled to benefits under the Black Lung Benefits Act.

Substantial evidence in the record supports the administrative law judge's determinations that Uzzle met those preconditions and that Island Creek did not rebut either the presumption that the miner's impairment arose from his coal mine employment or the presumption that his claim for benefits was timely filed. We thus DENY the coal company's petition for review.